STATE of Maine

v.

Raymond M. BISSON.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1983.

Decided April 22, 1985.

Janet T. Mills, Dist. Atty., Geoffrey Rushlau, (orally) Asst. Dist. Atty., Auburn, for plaintiff.

Michael Brust, (orally) Orville T. Ranger, Brunswick, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, and GLASSMAN, JJ.

NICHOLS, Justice.

The Defendant, Raymond M. Bisson, was convicted in Superior Court, Androscoggin County, for operating a motor vehicle while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–B. On appeal he asserts that the Superior Court committed two reversible errors; it refused to instruct the jury on the defense of entrapment, and it limited the defense counsel's cross-examination of the State's sole witness.

Because we agree that the failure to instruct the jury regarding entrapment constituted reversible error, we must vacate the judgment of conviction.

At about 1:45 A.M. on December 3, 1981, at Lisbon, Police Officer Peter Mador arrested the Defendant for operating a motor vehicle while under the influence of intoxicating liquor. At his jury trial more than a year later the Defendant testified as follows:

On the night of December 2, 1981, the Defendant had gone to the Camelot Inn, a nightclub, and had drunk alcoholic beverages until he became sick. He then got into his automobile, which he had left in the nightclub's parking lot, reclined the seat, and passed out. About three and a half hours later he was awakened by a police officer who ordered him to move his car from the lot. To quote the Defendant:

He said you have to move the car. I said, Why? He said you have to move it from this parking lot. I said I can't drive, I've got to stay here.

The officer was insistent, however, so the Defendant agreed to move his automobile. Thereupon the officer left, and the Defendant, after walking around for five minutes, decided he was "all right to drive" and drove away. On cross-examination, the Defendant conceded that he was not really fit to operate his automobile, adding, "but he told me to move the car. I was still in a daze from sleeping for three and a half hours. I felt I shouldn't move the car. I was going to move it to Graziano's parking lot there [one or two blocks away] and go to sleep." Just before he was to turn from the street into Graziano's parking lot, the same police officer pulled him over, administered field sobriety tests, and arrested him.

At trial the officer testified that he had indeed awakened the Defendant in his parked vehicle and had spoken to him, but only to advise him not to leave his engine running with the windows closed and not to operate the vehicle because he was under the influence of liquor. Five or six minutes after the conversation, according to the officer, he observed the Defendant operating in the left-hand lane without his headlights on and therefore stopped and arrested him.

At the close of the trial, the Defendant requested the court to instruct the jury:

If you find that the offense of driving under the influence was induced by the actions of the police officer, Peter Mador, then you must find the defendant not guilty.

The court declined to give this requested instruction. No instruction whatsoever regarding entrapment was given, nor was the jury instructed on any other theory of defense. The jury returned a verdict of guilty.

█ It is well established that failure to instruct the jury on a theory of a defense having rational support in the evidence constitutes reversible error. *State v. Bahre*, 456 A.2d 860, 866 (Me.1983); *State v. Rowe*, 453 A.2d 134, 139 (Me.1982); *State v. Rand*, 430 A.2d 808, 815 (Me.1981). Thus, courts have declared it necessary to instruct on entrapment whenever the issue of entrapment has been generated by the evidence, even though no such jury instruction was requested, *People v. Barraza*, 23 Cal.3d 675, 591 P.2d 947, 153 Cal.Rptr. 459 (1979), or though the requested instruction

may have misstated the law of entrapment, *United States v. Reynoso-Ulloa,* 548 F.2d 1329, 1339–40 (9th Cir.1977).

■ Here the defendant's counsel entered a timely objection to the jury instructions on the ground that "there was a failure to charge that the issue of entrapment was properly generated by the evidence, and, therefore, the burden is upon the State to establish beyond a reasonable doubt the predisposition of the accused to commit the crime." This objection contained a fair statement of the law. *State v. Matheson,* 363 A.2d 716 (Me.1976). Accordingly, our review on appeal is for saved error and we do not test it for obvious error. *See* M.R.Crim.P. 52(b).

■ The defense of entrapment is available for the offense of operating under the influence if appropriately generated by the evidence. *State v. Farnsworth,* 447 A.2d 1216 (Me.1982).[1]

In *Farnsworth,* our most recent decision dealing with entrapment, we noted that entrapment has two elements:

First, government action must have induced the defendant to commit the crime; second, the defendant must not have been predisposed to commit the crime.

447 A.2d at 1218. In the case before us the Defendant's testimony was pertinent to both of these elements.

■ The Defendant testified, in effect, that he was induced to drive while under the influence of intoxicating liquor by the police officer's command that the Defendant move his automobile. The officer's order plainly contemplated that the Defendant operate his motor vehicle although he was obviously under the influence.[2] This sort of inducement is different from, and arguably stronger than, the more typical entrapment situation in which an agent of the state, working under cover, badgers or beguiles a suspect into violating the law, *see, e.g., Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Entrapment may also be found where government agents, acting under color of apparent authority, order or sanction the activity that comprises the offense for which the defendant is subsequently arrested. *Cf. Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) (police officials who gave the defendant permission to demonstrate and then arrested him for doing so engaged in "an indefensible sort of entrapment"); *State v. Farnsworth, supra*

---

1. The State contends that the entrapment defense should not be available for operating under the influence, because this offense requires no culpable state of mind. The State's argument is predicated on a misconception of the rationale for the entrapment defense. Entrapment does not negate a culpable state of mind. For example, one who is entrapped into committing the offense of selling controlled substances does not lack the intent to sell them. (If he lacked a culpable state of mind, there would be no need to assert this theory of defense.) Rather, he will not be convicted because of policy reasons similar to due process considerations; these, however, do not ordinarily rise to a constitutional dimension, *see United States v. Garcia,* 562 F.2d 411 (7th Cir.1977). The purpose of the entrapment defense is "primarily to deter police officers from using law enforcement techniques which 'create' criminals." *State v. Farnsworth,* 447 A.2d at 1218, *quoting* 1 F. Wharton, Criminal Law § 52 at 253 (1978). These considerations apply with the same force to operating under the influence as they do to offenses requiring a culpable state of mind.

To be sure, entrapment is seldom asserted in drunk driving cases and still more seldom is it asserted meritoriously. We note, however, that we are not the only court to declare that this defense would be available in the appropriate drunk driving case, *see, e.g., Noles v. State,* 164 Ga.App. 191, 296 S.E.2d 768 (1982).

2. The police officer himself testified that he believed, when he approached the Defendant's parked automobile, that the Defendant was under the influence of liquor. Evidence sufficient to generate an issue need not come from the defendant but may be presented by one side or the other, or by both. *State v. Inman,* 350 A.2d 582, 587 n. 1 (Me.1976). Moreover, the condition of the Defendant at the time and the circumstances in which the officer first discovered him, according to their collective testimony—asleep in his automobile in the otherwise deserted parking lot of a drinking establishment, smelling of liquor, with his windows closed and his car radio blaring loudly enough to be heard from the outside—could leave little doubt in the mind of a trained police officer that the defendant was indeed under the influence of liquor.

(suggesting that it would have constituted inducement if the police officers had told defendant, a police informant charged with O.U.I. that they would "cover" him for driving while under the influence of liquor).[3] Indeed, inducement by a government agent may consist of any of the following: "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, pleas based on need, sympathy, or friendship, and any other government conduct which would create the risk of causing an otherwise unpredisposed person to commit the crime charged." *United States v. Burkley*, 591 F.2d 903 (D.C.Cir.1978), *cert. denied* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). An order given in the capacity of a police officer is a particularly potent form of government inducement.

The Defendant's testimony also indicated that he was not predisposed to commit the offense. He stated that he hesitated to follow the officer's repeated orders and that he remonstrated that he was unable to drive. *See State v. Matheson*, 363 A.2d at 722 & n. 7.

■ The fact that the Defendant's mind was concededly unclear when the officer spoke to him might lead a jury to disbelieve his testimony, but this does not deprive the Defendant of the right to have the jury consider his defense, once it is generated by the evidence. Even unsubstantial evidence of entrapment necessitates a jury charge on this defense. *United States v. Garcia*, 546 F.2d 613, 615 (5th Cir.), *cert. denied* 430 U.S. 958, 97 S.Ct. 1608, 51 L.Ed.2d 810 (1977). All that is necessary for the issue of entrapment to be generated is for the record to disclose evidence of entrapment of such nature and quality as to warrant a reasonable hypothesis that entrapment did occur. Once this is accomplished, the burden shifts to the State to prove the absence of entrapment

beyond a reasonable doubt. *State v. McCrillis*, 376 A.2d 95 (Me.1977); *State v. Matheson, supra.*

■ The Superior Court refused to instruct the jury on entrapment because it discerned no evidence of a "scheme, device, subterfuge or lure" on the part of the police officer. As our recent entrapment cases indicate, this is not one of the elements of entrapment which a defendant needs to show. *State v. Farnsworth, supra; State v. McCrillis, supra; State v. Matheson, supra.* Nor are we aware of any other jurisdiction where in recent times this has been held to be an essential element of entrapment.

It appears that the Superior Court below took the phrase, "scheme, device, subterfuge or lure," from our opinion in *State v. Gellers*, 282 A.2d 173 (Me.1971). There, however, we were merely quoting language from a description of entrapment found in an earlier case, *State v. Calanti*, 142 Me. 59, 64–65, 46 A.2d 412, 415 (1946). *See also State v. Carvelle*, 290 A.2d 190, 192 (Me.1972). The presence or absence of a "scheme, device, subterfuge or lure" was in no way essential to our decision in *Gellers, Carvelle* or *Calanti.*

■ Inasmuch as the evidence in the case before us was sufficient to generate the issue of entrapment, it was reversible error to fail to instruct the jury on entrapment. *See State v. Raubeson*, 488 A.2d 1379 (Me.1985); *State v. Glidden*, 487 A.2d 642 (Me.1985).

The jury that convicted the Defendant was left in complete ignorance of the nature, and even the legally cognizable existence, of his defense. "A verdict based on a misconception of the law is against the law, and to allow it to stand is not justice." *State v. Bahre*, 456 A.2d 860, 865 (Me. 1983).

---

3. The facts asserted by this Defendant closely resemble those which gave rise to one of the earlier decisions to overturn a conviction on the basis of entrapment, *Woo Wai v. United States,* 223 Fed. 412 (9th Cir.1915). The defendant in that case had been reluctant to violate certain immigration laws, but he was threatened with prosecution if he did *not* violate them.

As to the Defendant's remaining claim of error, because the underlying issue may arise on re-trial, we consider the merits of this claim in the interests of judicial economy. *See State v. Rusher,* 468 A.2d 1008 (Me.1983). This error the Defendant alleges consisted in limiting the defense counsel's cross-examination of the police officer. Specifically, the defense counsel asked the officer why he was no longer serving on the Lisbon police force, and the trial court sustained an objection on the ground of irrelevance. A ruling on relevancy is not reviewable except for an abuse of discretion. *State v. Gagnon,* 383 A.2d 25, 31 (Me.1978). It is well within a trial court's discretion to disallow counsel's inquiry. If, as the Defendant asserts on appeal, the purpose of the inquiry was to impeach the former officer's credibility, there should have been some offer of proof concerning how the expected answer would relate to his truthfulness. M.R.Evid. 103, 608(b). Instead, the defense counsel indicated he had a quite different expectation, for after the State's objection but before the court's ruling he improperly interjected, "You were discharged for being incompetent, weren't you?"

A defendant is permitted no greater leeway for collateral impeachment than our rules of evidence provide merely because his defense is entrapment. *State v. McCrillis, supra,* 376 A.2d at 98 n. 3.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.